IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

----------------------------------------------------------x
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                   Plaintiff,

   v.

FRONTIER HOT-DIP GALVANIZING, INC.

                 Defendant.

----------------------------------------------------------x

CIVIL ACTION NO.
1:16-cv-00691

**COMPLAINT AND
JURY TRIAL DEMAND**

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race (Black), national origin (Haitian), and retaliation and to provide appropriate relief to Jean Basquin, Johnny Mitchell, and other similarly aggrieved Black employees. As alleged with greater particularity in Paragraphs 12-15 below, Frontier Hot-Dip Galvanizing, Inc. ("Defendant" or "Frontier Hot Dip") subjected Mitchell, Basquin, and other Black employees to racial harassment, both in the form of racial slurs, including "coon," "monkey," and "nigger," and also in the form of racist graffiti being displayed in multiple areas in Defendant's workplace. Defendant ultimately terminated Mitchell because of his race (Black) and in retaliation for his complaints about the harassment. Defendant also subjected Basquin to national origin harassment, including calling him a "terrorist" and telling him to "go back to Africa," and then disciplined and terminated him in retaliation for filing a Charge of Discrimination with the Equal Employment Opportunity Commission.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Western District of New York.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant has continuously been a New York corporation doing business in the State of New York and the City of Buffalo, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Jean Basquin and Johnny Mitchell each filed a charge with the Commission alleging violations of Title VII by Defendant.

7.  On October 22, 2015, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.  The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9.  The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On May 6, 2016, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least 2011, Defendant has engaged in unlawful employment practices at its Buffalo facility, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2. These unlawful practices include, but are not limited to, Defendant engaging and continuing to engage in race discrimination against its Black employees working in its Buffalo facility by subjecting them to severe or pervasive race harassment, and by creating and maintaining a hostile work environment because of their race (Black), as follows:

   a.  Defendant subjected Mitchell, Basquin, and other Black employees to severe or pervasive harassment on the basis of their race (Black).

  b. The racial harassment included racial slurs made by supervisors and co-workers, and the open display of racist graffiti.

  c. White managers and co-workers openly referred to Black employees using racial slurs such as "nigger" and "monkey" and "coon," and well as terms such as "you guys" and "you people."

  d. Defendant's Superintendent Michael Oshirak used racial slurs and was present when non-Black employees used slurs.

  e. Two co-workers repeatedly called Mitchell "nigger," "punk," and "faggot" from around December 2014 until March 2015.

  f. From about December of 2014 through February of 2015, Mitchell complained to Superintendent Oshirak about the verbal harassment from these co-workers.

  g. Superintendent Oshirak laughed at the harassment and/or told Mitchell to ignore the harassment and walk away.

  h. Mitchell then complained to Vice President Robert Pierce and Executive Manager Jeff Pruet about the harassment by the two co-workers.

  i. Defendant met with one of the co-workers and told him to stop bothering Mitchell.

  j. After that meeting, the co-worker told Mitchell, "That's not going to stop me."

  k. The co-workers continued to verbally harass Mitchell. This included an incident on March 7, 2015, when one of the two co-workers pursued Mitchell, waited for Mitchell outside the bathroom, followed Mitchell to his work area, knocked items off his work station, and called him a "nigger" and a "faggot."

      m.     As detailed in Paragraph 13 below, Mitchell reacted to the slurs, which reaction then resulted in Superintendent Oshirak firing Mitchell and yelling at him "Leave nigger, and never come back!"

      n.     Additionally, shortly after Mitchell's termination, Superintendent Oshirak approached a Black employee who is Mitchell's brother-in-law and threatened, "I'm going to fuck that nigger up," referring to Mitchell.  He also said he would never hire anyone else in that family because "all you are stupid niggers."

      o.     Racist graffiti was on display on the walls of common areas such as the locker room, break room, and bathroom stalls for years.  The graffiti contained racial slurs and threats at different times including, "niggers must die" and "Johnny Mitchell is a true bitch nigger."

      p.     Managers spent extensive time in the areas where the graffiti was visible.

      q.     Mitchell and other Black employees complained about the graffiti and slurs.

      r.      Some Black employees were deterred from complaining by Superintendent Oshirak's frequently expressed willingness to fire employees and his suggestion that terminated employees would be unable to find other work.

      s.     Defendant was aware of yet failed to prevent or promptly correct the harassing behavior.

      t.     Defendant has no anti-harassment policy or any procedure in place for employees to complain about harassment or discrimination.

      13.     On approximately March 7, 2015, Defendant engaged in unlawful employment practices at its Buffalo facility, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2, including  but not limited to, terminating Mitchell because of his race (Black), as follows:

a. Mitchell worked at Frontier Hot Dip from at least January 2012 until March 7, 2015 when he was discharged.

b. As set forth above in Paragraph 12, Defendant subjected Mitchell to severe or pervasive race harassment, and created and maintained a hostile work environment because of his race (Black).

c. Mitchell was subjected to verbal harassment from managers and co-workers and was exposed to racist graffiti, including some directed at him personally, such as "Johnny Mitchell is a true bitch nigger."

d. Mitchell complained about the racist graffiti.

e. Mitchell complained to Superintendent Oshirak about the verbal harassment from two of his co-workers but was told to ignore the harassment and walk away.

f. Mitchell then complained to Vice President Robert Pierce and Executive Manager Jeff Pruet about the harassment by the two co-workers.

g. Defendant met with one of the co-workers and told him to stop bothering Mitchell.

h. But Defendant's actions did nothing to stop the harassment, as after the meeting, the co-worker told Mitchell, "That's not going to stop me."

i. And it didn't stop him, as the verbal racial harassment continued.

j. The offensive graffiti remained on the walls of the common areas.

k. On March 7, 2015, one of the two co-workers continued to harass Mitchell. He pursued Mitchell, waited for Mitchell outside the bathroom, followed Mitchell to his work area, knocked items off his work station, and called him a "nigger" and a "faggot."

l. Mitchell reacted to the slurs by slapping his co-worker on the face.

      m.      Superintendent Oshirak made no attempt to investigate what happened to prompt Mitchell's action.  He confronted Mitchell with a stick in his hand and yelled, "Leave nigger, and never come back!"   Soon after terminating Mitchell, Superintendent Oshirak approached a Black employee who is Mitchell's brother-in-law and threatened, "I'm going to fuck that nigger up," referring to Mitchell.  He also said he would never hire anyone else in that family because "all you are stupid niggers."

      o.      Employees of Defendant have engaged in more violent conduct than Mitchell's, including using sticks as weapons, and have not been terminated.

      p.      Defendant allowed and perpetuated a hostile work environment based on race (Black).

      q.      Even Defendant's discharge of Mitchell included a racial slur: "Leave nigger, and never come back!"

      r.      But for Mitchell's race (Black), his discharge would not have occurred.

      14.      Since at least 2011, Defendant has engaged in unlawful employment practices at its Buffalo facility, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2. These unlawful practices include, but are not limited to, Defendant engaging in national origin discrimination against Jean Basquin by subjecting him to severe or pervasive national origin harassment, and by creating and maintaining a hostile work environment because of his national origin (Haitian).

      a.      Basquin worked at Frontier Hot Dip from at least April 30, 2008 to March 2, 2015, when he was discharged.

  b. Superintendent Oshirak routinely made offensive comments to Basquin such as, "People like you come to this country to get a handout," "you people just come here to collect welfare," and "you don't deserve to work here."

  c. On approximately March 19, 2014, Superintendent Oshirak asked the employees on his shift to confirm their citizenship, purportedly because the company had received a contract from the U.S. military that required anyone who worked on the project to be a U.S. citizen.

  d. When Superintendent Oshirak approached Basquin, he shouted, "We don't work with terrorists! Only American citizens work here!" and "Go back to Africa!" Superintendent Oshirak also made monkey noises and gestures at Basquin.

  e. Superintendent Oshirak also said, "I think you are here illegally," and threatened to call the FBI.

  f. Although Basquin possesses a Green Card and completed an I-9 form when he started his employment, he was terrified by the threats to call government authorities on him.

  g. Basquin complained to Vice President Pierce and Executive Manager Pruet that Superintendent Oshirak called him a terrorist.

  h. As stated in Paragraph 12(t) above, Defendant has no anti-harassment policy or any procedure in place for employees to complain about harassment or discrimination.

  i. Even when Basquin complained, Defendant failed to prevent or promptly correct the harassing behavior.

 15. Since at least 2014, Defendant has engaged in unlawful employment practices at its Buffalo facility, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3. These unlawful practices include, but are not limited to, Defendant retaliating against Mitchell for

opposing Defendant's discriminatory conduct and retaliating against Basquin for filing a Charge with the EEOC.

      a.      Basquin filed a Charge of Discrimination with the EEOC on March 21, 2014 alleging harassment based on his national origin (Haitian).

      b.      When Basquin reported to work on approximately March 24, 2014, Defendant's President Lewis Pierce waived the EEOC Notice of Charge form in his face.

      c.      That day, Basquin received two disciplinary warnings for excessive absences for absences that had occurred months earlier, on January 14, 2014 and February 27, 2014.

      d.      Prior to March 2014, Basquin had never received a disciplinary warning.

      e.      On approximately August 1, 2014, he received another warning for excessive absences.  Due to the March 24, 2014 warnings, he had no sick or vacation leave remaining.

      f.      On June 6, 12, and 13, 2014, he received disciplinary warnings for allegedly refusing to galvanize bomb racks, despite Superintendent Oshirak's earlier command that Basquin not galvanize bomb racks because he was a foreigner.

      g.      On approximately September 29, 2014, Basquin received another disciplinary warning for leaving work early, despite receiving permission to leave so as to attend to his ill son. He was placed on six-month probation and threatened with termination.

      h.      Basquin was discharged on March 2, 2015 for purportedly failing to show up for an overtime shift.  In fact, Basquin had obtained permission for the time off.

      i.      Defendant's March 2, 2015 disciplinary action, and its previous disciplinary actions set forth in Paragraphs 15(b)-(h) above, were motivated by and in retaliation for Basquin filing his Charge of Discrimination with the EEOC on March 21, 2014.

j. As detailed in Paragraphs 12(f)-(h) above, Mitchell complained about the racist graffiti, and from about December of 2014 through February of 2015, he repeatedly complained about the verbal harassment directed at him from his co-workers.

k. On his final day of work, March 7, 2015, Mitchell lashed out in opposition to racist verbal provocation, including being called a "nigger."

l. Mitchell was terminated within minutes of that incident and within weeks of his multiple complaints to Defendant.

m. Mitchell's termination was motivated by and in retaliation for the complaints he had lodged about the racial harassment and racist graffiti.

16. The unlawful employment practices complained of in Paragraphs 12-15 above were and are intentional.

17. The unlawful employment practices complained of in Paragraphs 12-15 above were and are done with malice or with reckless indifference to the federally protected rights of Mitchell, Basquin, and similarly aggrieved Black employees.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from harassment or discharge on the basis of race.

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in harassment on the basis of national origin.

C.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in retaliation for protected activity.

D.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for Blacks and Haitians, and which eradicate the effects of its past and present unlawful employment practices.

E.      Order Defendant to make whole Mitchell and Basquin, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement.

F.      Order Defendant to make whole Mitchell, Basquin, and other similarly aggrieved Black employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 12-15 above, including job search or medical expenses, in amounts to be determined at trial.

H.      Order Defendant to make whole Mitchell, Basquin and other similarly aggrieved Black employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in Paragraphs 12-15 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

I.      Order Defendant to pay Mitchell, Basquin and other similarly aggrieved Black employees punitive damages for its malicious and reckless conduct, as described in Paragraphs 12-15 above, in amounts to be determined at trial.

J.     Grant such further relief as the Court deems necessary and proper in the public interest.

K.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

P. David Lopez
General Counsel

James L. Lee
Associate General Counsel

/s/ JEFFREY BURSTEIN
Jeffrey Burstein
Regional Attorney

/s/ NORA E. CURTIN
Nora E. Curtin
Supervisory Trial Attorney

/s/ DANIEL SELTZER
Daniel Seltzer
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Telephone: (212) 336-3701
Facsimile: (212) 336-3623
Email: daniel.seltzer@eeoc.gov