# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | **DECISION AND ORDER** |
| Plaintiff, | 18-CV-00562-LJV-JJM |
| v. | |
| STAFFING SOLUTIONS OF WNY, INC., | |
| Defendant. | |

───────────────────────────────────────────────

The Equal Employment Opportunity Commission ("EEOC") commenced this action alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the Age Discrimination in Employment Act of 1967 ("ADEA"). Complaint [1].[1]  Before the court are the parties' cross-motions [38, 39] to adopt their competing Case Management Order ("CMO") proposals.  Having considered the parties' submissions [27, 28, 35, 36, 38-41, 48, 51, 52] and heard additional argument on April 9 and August 26, 2020 [29, 53], I find that no further submissions are necessary, and adopt the EEOC's proposed discovery framework.

## BACKGROUND

In November 2015, Tami Iser filed a Charge of Discrimination against Staffing Solutions of WNY, Inc. ("Staffing Solutions"). [7], pp. 32-35 of 38 (CM/ECF).  As part of its investigation into that charge, the EEOC imaged Staffing Solutions' computers and reviewed

───────────────────────────────────────────────

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

other documents in February 2016 (Joseph Affidavit [38-1], ¶8),[2] which resulted in a November 7, 2017 Determination that "from at least January 1, 2013 through the present, [Staffing Solutions] engaged in discriminatory practices on the basis of race, sex, age, and disability in violation of Title VII, the ADA, and the ADEA". [7], p. 37 of 38 (CM/ECF).

After conciliation efforts failed, the EEOC commenced this action in May 2018, alleging ongoing discrimination from 2013 or 2014 (depending on the claimed discrimination) through the present. *See* Complaint [1], ¶¶21, 25, 34, 37. Following resolution of Staffing Solutions' motion for partial dismissal of the Complaint (EEOC v. Staffing Solutions, 2018 WL 10780966 (W.D.N.Y. 2018), adopted, 2020 WL 1131221 (W.D.N.Y. 2020)), I conducted a scheduling conference, at which I set some preliminary deadlines and permitted additional briefing on the parties' competing proposals [27, 28] concerning the scope and sequence of discovery. *See* April 9, 2020 Text Order [30].

Thereafter, Staffing Solutions circulated a revised proposed CMO [35] and then filed its motion to adopt that proposal [38], followed by the EEOC's motion to adopt its counterproposal [39]. While these motions were under consideration, Staffing Solutions submitted a letter request on August 20, 2020 [48] seeking leave to make additional submissions based on purported "new information obtained in discovery". After hearing from the parties at the August 26, 2020 conference [53], I took that request under advisement.

---

[2] The parties sharply dispute the burden the EEOC's initial investigation placed on Staffing Solutions. *See* Faulhaber Affidavit [38-4], ¶6; EEOC's May 15, 2020 responding letter brief [41], p. 8 n. 7.

-2-

**DISCUSSION**

The primary difference in the parties' proposals ([28-1], [38-2], pp. 2-6 of 59 (CM/ECF)) centers on whether the EEOC is entitled from the outset to conduct discovery to identify additional claimants for the period from the end of its investigation in February 2016 to the present. Staffing Solutions contends that "it should be incumbent on the EEOC to first establish that [it] in fact engaged in discriminatory practices, and that such practices are continuing". Staffing Solutions' April 20, 2020 letter brief [35], p. 2. Consequently, it proposes a two-phased approach to discovery, with Phase One targeted at determining "whether it is appropriate for [the EEOC] to identify additional claimants based upon the EEOC's allegations of 'continued' discrimination or retaliation purportedly occurring after the completion of the EEOC's investigation in March 2016 and, if so, the proper scope of the discovery in Phase Two as to additional claimants and as to the alleged 'continued' misconduct engaged in with respect to such additional claimants". Joseph Affidavit [38-1], ¶2.

The EEOC disagrees with this phased approach, contending that since its "claims for discrimination extend through the present, documents that would allow EEOC to identify discrimination victims after February 2016 are indisputably relevant". EEOC's May 8, 2020 letter brief [39], p. 6. It argues that Staffing Solutions' phased proposal unduly restricts it to "cherry-picked" evidence directed to demonstrating that there was no discrimination after February 2016 that would preclude the identification of additional claimants. Id., p. 4.

I agree with the EEOC. In employment discrimination cases, "courts favor 'liberal civil discovery rules,' giving plaintiffs 'broad access to employers' records in an effort to document their claims'". Ralph v. Town of Southampton, 2016 WL 3470041, *6 (E.D.N.Y. 2016). This extends to the EEOC's ability to identify claimants. "[T]he EEOC is not precluded

from identifying new claimants within the scope of the claims that were investigated, disclosed and conciliated", EEOC v. United Parcel Service, 2017 WL 2829513, *9 (E.D.N.Y. 2017), including "new claimants (whose claims were effectively identical to the claims of the pre-existing claimants) after filing this action". EEOC v. United Health Programs of America, Inc., 213 F. Supp. 3d 377, 403 (E.D.N.Y. 2016).

However, I must still ensure that the discovery sought by the EEOC is proportional to the needs of the case and not unduly burdensome to Staffing Solutions. *See* Fed. R. Civ. P. ("Rule") 26(b)(1). According to Staffing Solutions, the EEOC's discovery proposal would require it to "devote virtually all of [its] employees and resources to responding to these requests", causing it to exhaust the insurance coverage available to pay legitimate claimants and force it out of business. Staffing Solutions' Memorandum of Law [38-3], pp. 3-9. While I am sympathetic to Staffing Solutions' concerns and have carefully considered them, they appear overstated.

Although the EEOC's proposed CMO [28-1] broadly requires the production of "all personnel files, papers applications, interview forms, other application materials, emailed applications, emails with applicants, emails with Defendant's clients, interview appointments, job postings, and job orders for the period January 1, 2013 though the present not already produced" (id., ¶7), it has since sufficiently narrowed the scope of discovery originally sought to limit the burden on Staffing Solutions' business. *See* EEOC's May 15, 2020 responding letter brief [41], p. 5 n. 2; EEOC's May 1, 2020 Request for production of documents [39-3].

As a result of its prior investigation, the EEOC is familiar with how Staffing Solutions maintains its records. Based on that familiarity, the EEOC points to five centrally located records that will allow it to identify any additional claimants. EEOC's May 8, 2020 letter

brief [39], p. 9.³  Notably, Staffing Solutions does not dispute the EEOC's characterization of how these records are maintained.

Specifically, the EEOC "believes almost all claimant identification" can come from Staffing Solutions' Microsoft Outlook contact records from January 1, 2013 through present. Id. Since not all applicants were entered into Outlook, the EEOC also seeks paper "I-9" forms, which are maintained primarily in binders (id., p. 10), and Outlook appointments. Id., p. 11. The EEOC further seeks workers' compensation and drug test records to investigate its claims of disability discrimination and identify claimants. From its 2016 investigation, the EEOC knows these records to be centrally stored by Staffing Solutions in binders and a specific filing cabinet. Id., p. 11 n. 8.

At the August 26, 2020 conference, the EEOC estimated that the discovery it seeks to identify any additional claimants can be produced by Staffing Solutions within "a couple of hours".⁴ That estimate was not contested or refuted by Staffing Solutions. Nevertheless, Staffing Solutions argues that the EEOC's attempt to "reconduct" the prior investigation seeks "access to virtually every document and piece of data maintained by the business for the past seven years". Staffing Solutions' Memorandum of Law [38-3], p. 5. In particular, it points to the following demand from the EEOC's May 1, 2020 Requests for Production of Documents [39-3]:

> "33. Documents concerning EEOC Charge Number 520-2016-0001, the allegations contained therein, Defendant's defense to such allegations, and

---

³   Under the EEOC's proposal, once all of the claimants are identified, Staffing Solutions will need to provide more extensive, but targeted discovery, for the identified claimants. At this point, the EEOC has identified approximately 71 claimants. Staffing Solutions' August 24, 2020 letter brief [52], p. 1. When compared to the size of Staffing Solutions' database, which contains more than 10,000 individuals, additional discovery concerning that number of claimants appears manageable. Joseph Affidavit [38-1], ¶14. Moreover, the EEOC has agreed "to bear much of the burden of that production". EEOC's May 15, 2020 responding letter brief [41], p. 7.

⁴   This is an unofficial chambers transcription made from the digital audio recording of that proceeding.

> Defendant's investigation of such allegations, including documents provided to, or received from, EEOC during the investigation of Charge Number 520-2016-0001. This includes all responsive documents from January 1, 2013 through present."

Staffing Solutions appears to misinterpret that request, which is expressly limited to a *single* claimant. To the extent that there is any confusion about the scope of the request, the EEOC states that it only seeks "a narrow class of documents directly related to Tammi Iser's charge of discrimination", including Staffing Solutions' internal investigation of the charge, as well as e-mails concerning the charge, none of which were within the scope of documents obtained during its 2016 investigation. EEOC's May 15, 2020 responding letter brief [41], pp. 7-8.

The only items that the EEOC seeks which overlap with its prior investigation in 2016 are the Outlook contact records and workers' compensation forms for that period. EEOC's May 8, 2020 letter brief [39], p. 9 n. 7; EEOC's May 15, 2020 responding letter brief [41], p. 6 n. 4. I accept the EEOC's representation that not all of the relevant information from these sources were obtained during its prior investigation. Id. Nor does this request appear to place any additional burden on Staffing Solutions.

The scope of discovery sought by the EEOC will also not result in a delay of "years before [it] would . . . complete its 'identification' of additional claimants" as Staffing Solutions contends. Staffing Solutions' Responding Memorandum of Law [40], p. 5. The EEOC's own proposal limits itself only to a *four-month* period to review the discovery and identify any additional claimants. *See* EEOC's proposed CMO [28-1], ¶¶7-8.

Lastly, Staffing Solutions makes much of the fact that through the use of mass mailings the EEOC "trolls" for claimants, resulting in a "vast majority of claimants either hav[ing] no claim based on the documentary evidence or at best questionable claims". [40], pp.

7-8, n. 8. Staffing Solutions asserts similar arguments in its August 20, 2020 letter [48] requesting leave to submit further briefing. These are issues for a later stage of the case. I anticipate that the production contemplated by the EEOC's proposed CMO will permit it to accurately identify potential claimants, and Staffing Solutions will have the opportunity to challenge the merits of their claims.

       Likewise, Staffing Solutions points to the burden created by the EEOC's identification of 86 witnesses, including 36 non-claimants, in its Rule 26(a) disclosure, which it estimates will result in deposition costs of $300,000. Staffing Solutions' Memorandum of Law [38-3], pp. 7-8. Staffing Solutions may face difficult decisions on how to most cost-effectively obtain discovery from the EEOC's witnesses and the claimants it identifies, but I fail to see how that burden supplants the EEOC's right to conduct discovery in order to identify claimants.

## CONCLUSION

       For these reasons, Staffing Solutions' request for leave to submit further briefing [48] and motion to adopt its CMO proposal [38] are denied, and the EEOC's motion [39] to adopt its proposed CMO is granted, except to the extent of the scope of discovery set forth in paragraph 7. A telephonic conference is scheduled for September 28, 2020 at 11:00 a.m. to set appropriate deadlines. To access the conference, counsel shall dial 888-808-6929, then access code 1533000#.

**SO ORDERED**.

Dated: September 10, 2020

                                                   /s/Jeremiah J. McCarthy
                                                  JEREMIAH J. MCCARTHY
                                                  United States Magistrate Judge