**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,**

          **Plaintiff,**

**v.**                                                          **16-CV-0691V(Sr)**

**FRONTIER HOT-DIP GALVANIZING, INC.,**

          **Defendant.**

_____

<u>**DECISION AND ORDER**</u>

This matter was referred to the undersigned by the Hon. Lawrence  J.

Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #15.


The Equal Employment Opportunity Commission ("EEOC"), commenced

this action pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-5(f)(1) & (3), and Section 102 of the Civil Rights Act of 1991,

42 U.S.C. § 1981a, against Frontier Hot-Dip Galvanizing, Inc. ("Frontier"), on behalf of

two black employees (one of whom is Haitian), and 24 similarly aggrieved black

employees ("claimants"), who allege that they were subjected to racial and national

origin discrimination and a hostile work environment and terminated from their

employment after complaining about their work conditions to Frontier and the EEOC.

Dkt. #1.

Currently before the Court are the EEOC's motions for a protective order for discovery demands seeking privileged communications and attorney work product (Dkt. #85)[1]; to compel defendant to provide its most recent financial statements and tax returns (Dkt. #93); and to compel production of claimants' time sheets. Dkt. #105. For the following reasons, it is recommended that the EEOC's motions be granted in part.

**Privileged Communications**

Defendant's Document Request No.1 seeks all documents evidencing or reflecting discussions or communications that the EEOC initiated with any claimant prior to such claimant agreeing to become a claimant in this action. Dkt. #85-6.

Defendant's Document Request No. 2 seeks all documents evidencing or reflecting discussions or communications that any claimant initiated with the EEOC prior to such claimant agreeing to become a claimant in this action. Dkt. #85-6.

Defendant's Document Request No. 3 seeks all documents that each claimant provided to the EEOC or any of the EEOC's representatives prior to such claimant agreeing to become a claimant in this action. Dkt. #85-6.

Defendant's Document Request No. 4 seeks all documents that each claimant received from the EEOC and/or any of the EEOC's representatives prior to such claimant agreeing to become a claimant in this action. Dkt. #85-6.

---

[1] The scope of this dispute has narrowed following defendant's decision to withdraw interrogatories served upon the claimants (Dkt. #89); what remains is a  dispute over Frontier's Document Demand Nos. 1-4 and 16.

Defendant's Document Request No. 16 seeks all documents for each claimant relating to, concerning or reflecting any text messages, emails and/or social media issued by each such claimant with persons other than the EEOC concerning discrimination or hostile work environment or Frontier or this lawsuit except communications between the claimant and any other claimant that took place after both parties to the communication decided to become claimants.

The EEOC asserts that it has produced all non-privileged portions of its investigative files concerning the underlying charges of discrimination, including the EEOC's communications with claimants and potential claimants during the investigation and any corresponding notes up to the point of conciliation failure; however, the EEOC argues that communications with claimants or potential claimants after conciliation failed and the EEOC began contemplating suit, as well as during the course of litigation, are protected by attorney-client privilege and the attorney work product doctrine. Dkt. #85, pp.7-8. The EEOC states that "the only information the EEOC has withheld constitutes privileged communications between the agency and the Claimants or potential Claimants." Dkt. #85, p.8.  Because claimants were all subjected to the same hostile work environment, the EEOC argues that once they were contacted by the EEOC, communications between and among claimants about the lawsuit would be for the common interest of vindicating their rights. Dkt. #85, p.10.

Defendant responds that the document requests only seek documents reflecting communications which took place prior to the decision by the individuals to

become claimants. Dkt. #88, p.8. To the extent that any such documents are protected by privilege, defendant requests that the EEOC provide a privilege log. Dkt. #88, p.8. Defendant emphasizes its belief that communications from individuals declining to become claimants are discoverable and must be produced. Dkt. #88, p.8.

The EEOC replies that its communications with potential claimants are privileged, regardless of whether the potential claimant ultimately chooses to permit the EEOC to represent his or her legal interests. Dkt. #90, p.2. As to communications among claimants, the EEOC argues that any such communications occurring after contact from the EEOC are protected by the common interest rule. Dkt. #90, p.3. More specifically, the EEOC argues that once claimants are contacted by the EEOC, communication among claimants "necessarily concerns their common legal interest in vindicating their rights as employees subjected to workplace discrimination." Dkt. #90, p.3. The EEOC reiterates that it has "produced all non-privileged communications between the EEOC and Charging Parties . . . as well as between the EEOC and Claimants, which occurred before the end of the EEOC's investigation." Dkt. #90, p.1.

As amended in 2015, Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

-4-

Rule 26(b)(3) ordinarily excludes discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative Pursuant to Rule 26(b)(4):

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Local Rule 26(d) provides that the party asserting privilege shall identify the nature of the privilege and indicate: (a) the type of document; (b) general content of the document; (c) date of document; and (d) sufficient information to identify the document, unless divulging such information would cause disclosure of the allegedly privileged information.

For good cause, the court may issue an order to protect a party from whom discovery is sought from annoyance, embarrassment, oppression, or undue burden or expense, including an order, *inter alia*, limiting the scope of disclosure. Fed. R. Civ. P. 26(c)(1). Courts have broad discretion to determine when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 26 (1984). "The protection of documents covered by the attorney-client privilege or the work product doctrine constitutes "good cause" for the issuance of a protective order." *In re American Realty Cap. Props., Inc. Litig.*, No. 15-MC-40, 2017 WL 11641957, at *2 (S.D.N.Y. Aug. 14, 2017).

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* at 419. The burden is on the party asserting the attorney-client privilege to establish each element of this three-part standard. *Koumoulis v. Independent Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013), *aff'd* 29 F. Supp.3d 142 (E.D.N.Y. 2014).

"The attorney-client privilege can cover communications between EEOC counsel and the employees upon whose behalf it sues." *EEOC v. Johnson & Higgins, Inc.*, 93 CV 5481, 1998 WL 778369, at *4 (S.D.N.Y. 1998); *See EEOC v. Pioneer Hotel, Inc.,* 2:11-CV-1588, 2014 WL 4987418, at * 6 (D. Nev. Oct. 6, 2014) ("Courts have recognized an attorney-client relationship between EEOC counsel and the claimants whose interests the EEOC seeks to protect in the litigation); *EEOC v. DiMare Ruskin, Inc.*, 2:11-CV-158, 2012 WL 12067868, at *6 (M.D. Fla. Feb. 15, 2012) ("After the EEOC undertakes to file suit seeking relief for individual victims of discrimination . . . the EEOC stands in the role of attorney for those individuals . . . who should not be denied the ability to engage in confidential communications with the attorney seeking relief on their behalf simply because the suit was filed by the government, as authorized by statute, rather than by the individuals themselves."); *EEOC v. Scrub, Inc*., No. 09 C 4228, 2010 WL 2136807, at *7 (N.D. Ill. May 25, 2010) ("Communications between the

EEOC and individuals for whom the EEOC seeks relief are . . . privileged by *de facto* attorney-client privilege."); *EEOC v. Int'l Profit Assocs., Inc*., 206 F.R.D. 215, 219 (N.D. Ill. Mar. 27, 2002)("Communications between prospective class members and EEOC counsel and their agents are protected from disclosure by the attorney-client privilege.").

The EEOC's commencement of a Title VII action "does not automatically create attorney-client privilege across an entire potential class," however. *Scrub,* 2010 WL 2136807, at *7. For the attorney-client relationship to be recognized, the employee "must have taken some affirmative step to enter into a relationship with the EEOC." *Pioneer Hotel*, 2014 WL 4987418, at *7; *See EEOC v. CRST Van Expedited, Inc*., No. C07-95, 2009 WL 136025, at *4 (N.D. Iowa Jan. 20, 2009) ("an attorney-client relationship is not established until the employee either asks the EEOC for advice . . . or agrees to become a member of the class."). Once the employee indicates a willingness for the EEOC to seek relief, the attorney-client privilege protects an employee's communications with the EEOC even if the employee subsequently opts out of EEOC representation. *EEOC v. Tony's Lounge, Inc*., 08-CV-677, 2010 WL 1444874, at *2 (S.D. Ill. April 9, 2010).

Communications may also be protected by the attorney work product doctrine. The attorney work product doctrine is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy. *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998); *See Hickman v. Taylor*, 329 U.S. 495

(1947). To warrant protection as attorney work product, the material at issue must be:
(1) a document or tangible thing; (2) that was prepared in anticipation of litigation; (3) by
or for a party or his representative. *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.,* 252
F.R.D.163, 173 (S.D.N.Y. 2008). A document will be protected as attorney work product
if, "in light of the nature of the document and the factual situation in the particular case,
the document can fairly be said to have been prepared or obtained *because* of the
prospect of litigation." *Adlman*, 135 F.3d at 1202; *See Wultz v. Bank of China Ltd.*, 304
F.R.D. 384, 393-94 (S.D.N.Y. 2015) ("[T]he materials must result from the conduct of
investigative or analytical tasks to aid counsel in preparing for litigation.").

        Within the context of EEOC litigation, that point is commonly deemed to
be after the EEOC has determined that there is reasonable cause to believe that
discrimination has occurred and conciliation efforts have failed. *See International Profit
Assocs.*, 205 F.R.D. at 220 (distinguishing between initial investigation when the EEOC
is a neutral third party and the EEOC's determination to litigate once reasonable cause
has been found and conciliation has failed). Past this point, statements and notes of
interviews with prospective class members are protected work product. *CRST Van
Expedited,* 2009 136025, at *4; *See Scrub*, 2010 WL 2136807, at *9 (completed
questionnaires and interview notes of communications between prospective class
members and EEOC counsel are protected by the attorney work product doctrine).
Statements and notes of interviews of non-parties are also protected work product.
*Pioneer Hotel*, 2014 WL 4987418, at *4.

Finally, the common interest doctrine serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint strategy has been decided upon and undertaken by the parties and their respective counsel. *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989), *cert. denied*, 502 U.S. 810 (1991). The doctrine protects "communications made in the course of an ongoing common enterprise and intended to further the enterprise." *Id.* Stated another way, the common interest doctrine "precludes a waiver of the underlying privilege concerning confidential communications between the parties made in the course of an ongoing common enterprise and intended to further the enterprise." *Schultz v. Milhorat*, CV10-103, 2011 WL 13305347, at *2 (E.D.N.Y. April 8, 2011) (internal quotation omitted). It can protect against waiver of both the attorney-client privilege and the attorney work-product doctrine. *Id.*

"In order to demonstrate the applicability of the common interest doctrine, the party asserting the rule must show that (1) it shares a common legal interest with the party with whom the information was shared; and (2) the statements for which protection is sought must have been designed to further that interest." *Id.* at *3. The common interest doctrine has been applied to communications made between two individual parties outside of the presence of an attorney; communications between a party's attorney and a third party with a common interest; communications between a party and the attorney of another party with a common interest; and two parties with a common interest outside of the presence of an attorney. *Id.* at *4. Whatever the configuration of individuals sharing a common interest, "the communication will only be

privileged if it was specifically related to a communication with the attorney made for the purpose of obtaining or conveying legal advice." *Id.*

Applying these principles to the document demands, the Court determines that any documents or communications exchanged among or evidencing communications between the EEOC and any claimants subsequent to conciliation failure are protected by the attorney-client privilege; attorney work product doctrine and common interest doctrine. Accordingly, the Court grants the EEOC a protective order precluding disclosure of such documentation. To the extent that the EEOC is claiming privilege with respect to any such documents or communications preceding conciliation failure, the EEOC shall provide defendant with a privilege log.

### Financial Statements

The EEOC seeks updated financial information from defendant, arguing that defendant's financial condition has reportedly changed since its original disclosure of audited financial statements and federal and state tax returns for 2017 and 2018, and such information is relevant to its claim for punitive damages. Dkt. #93. The EEOC notes that defendant is a privately-owned company and that it attempted to question defendant's Vice-President, who is responsible for defendant's accounting, regarding defendant's financial condition, but defense counsel instructed the witness not to answer such questions. Dkt. #93.

Defendant does not dispute that its financial circumstances will be relevant to a jury considering an award of punitive damages, but argues that such disclosure is premature and should not be required until a trial date is set. Dkt. #94. Defendant notes that it only disclosed the original financial information to facilitate settlement negotiations. Dkt. #94.

The EEOC's First Request for the Production of Documents, dated July 12, 2019, seeks Frontier's Income Tax Returns for 2011 through the present, including exhibits and attachments; all audited and unaudited Balance Sheets reflecting assets, liabilities, and net worth for Frontier for each fiscal year from 2011 through the present, including supporting documents; all audited and unaudited Profit and Loss statements for each fiscal year from 2011 through the present, including supporting documents; cash flow analysis statements for each fiscal year from 2011 through the present; and all financial statements for each fiscal year from 2011 through the present. Dkt. #93-1, ¶ 31.

Defendant objected to the demand on the grounds that "other than its most recent financial statements and tax returns the requested documents are not relevant to the claims and defenses in this action." Dkt. #93-1, p.14. Defendant designated the tax returns and financial statements produced during the EEOC's investigation as confidential pursuant to the Confidentiality and Protective Order and declared that such documents are not relevant to the claims in this action. Dkt. #93-1, p.15.

Although tax returns are not inherently privileged, courts are generally reluctant to compel their disclosure because of both "the private nature of the sensitive information contained therein" and "the public interest in encouraging the filing by taxpayers of complete and accurate returns." *Libaire v. Kaplan*, 760 F. Supp.2d 288, 294 (E.D.N.Y. 2011), *quoting Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979). To compel their disclosure, a two-part test must be satisfied: (1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the tax returns because the information is not "otherwise readily obtainable." *Id., quoting United States v. Nonanno Org. Crim. Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988). The requesting party bears the burden of establishing both elements. *Id.*

Because a defendant's financial circumstances, wealth or net worth may be considered in determining an award of exemplary damages, defendant's financial information is relevant to plaintiff's claim for punitive damages. *Renaissance Nutrition, Inc. v. Jarrett*, No. 06-CV-380, 2008 WL 1848600, at *9 (W.D.N.Y. Arpil 23, 2008); *See Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 150 (E.D.N.Y. 2008) ("Tax returns are considered relevant to the subject matter of an action when a party's income may be used to calculate damages."). Although the courts are split on appropriate timing for such discovery, this Court believes that pre-trial discovery of defendant's financial information is most efficient. *See Spin Master Ltd. v. Bureau Veritas Consumer Products*, 08-CV-923, 2016 WL 690819, at *18 (W.D.N.Y. Feb. 22, 2016).

Given the time that has passed since defendant's initial disclosure of financial information, and given defendant's refusal to answer questions about its financial condition at deposition, defendant is directed to disclose its most recent audited annual financial statement or tax return within 30 days of the entry of this Decision and Order. Defendant will not be required to supplement such information absent further order of the Court upon good cause shown, *e.g.*, in the event that such information has become stale by the time of trial.

**Time sheets**

The EEOC's First Request for the Production of Documents, dated July 12, 2019, includes a request for the complete personnel files of 25 employees. Dkt. #105-1, No.1. The document demand defines the term "personnel file" as follows:

> "Personnel File" means not only applications for employment, evaluations, and the like, commonly kept in some central place and called by that name or something similar, but also all other documents concerning or primarily concerning the person referred to, regardless of where kept and regardless of by whom prepared, including notes taken during conversations with the person, notes taken during conversations concerning the person, memoranda and letters exchanged with the person and those exchanged with other persons but concerning the person, correspondence with any state employment service concerning the person, records of all communications with other employees concerning the person, investigative files and reports concerning or substantially concerning the person identified, pay information, pay history, bonuses, performance evaluations, memoranda, commendations, warnings and discipline.

Dkt. #105-1, p.5, #8.

Defendant's response, dated November 19, 2019, states as follows:

Defendant objects to this request to the extent it requests documents relating to individuals other than those identified by the Plaintiff during its investigation as having been aggrieved. The Defendant objects to this request to the extent it seeks documents previously provided or made available to the Defendants, during the course of its investigation of the charges by Mitchell and Basquin. Defendant[] further object[s] to this request to the extent it seeks the production of personnel files for individuals whom the Plaintiff knew, based on its investigation were employed by Coastal Staffing and not the Defendant. Without waiver of these objections, and subject to the Stipulated confidentiality and Protective Order entered in this action, the Defendant has produced the personnel files for those individuals directly employed by the Plaintiff [sic] and have issued a subpoena to Coastal Staffing Inc. for the personnel files of the individuals employed by Coastal Staffing and assigned to work at Defendant's facility.

Dkt. #106-1, No.1.

By letter dated March 5, 2020, in response to the EEOC's subpoena, Coastal Staffing produced electronic copies of "Employee Hours by Client" reports for employees assigned to work at defendant for the periods August 2013 through December 2013, as well as calendar year 2014 and January 2015 through May 2015, and advised that hard copy records for calendar year 2012 and January 2013 through August 2013 would be made available for review upon request. Dkt. #106-2.

During the course of depositions of claimants, defendant questioned certain claimants about time sheets in its possession. Dkt. #105. The EEOC represents that it was unaware of such documents until they were produced at deposition. Dkt. #105.

-14-

By email dated January 12, 2023, the EEOC advised defendant that its

> First Request for Production of Documents . . . sought the
> "Personnel Files" of the Claimants from 2011 to the present,
> including time and payroll records. Since Claimant
> depositions began, you have produced a small selection of
> weekly time sheets showing some hours work for some
> Claimants. We have also obtained certain payroll records
> from third-party staffing agencies from August 2013 to the
> present. As Coastal's document custodian testified last
> week, however, all payroll records from before August 2,
> 2013 were destroyed last year due to flooding. Frontier's
> weekly records of hours worked is thus the only remaining
> source of Claimant hours worked for this period of time.
>
> Please supplement Frontier's document production to
> provide the EEOC with whatever weekly time sheets and
> payroll records Frontier has dating from January 1, 2011
> through August 1, 2013.

Dkt. #105-4.

By email dated January 19, 2023, defendant objected to the EEOC's

request on the grounds of relevance and absence of any justification for seeking such

records after the completion of depositions. Dkt. #105-5. Defendant also argued that

the EEOC should have obtained the information sought from Coastal Staffing before

such records were destroyed. Dkt. #105-5.

By email dated February 8, 2023, the EEOC reiterated its request and

emphasized that:

> the EEOC did not know Frontier had these historical payroll
> records until you began producing them immediately before
> Claimant depositions (in fact, sometimes during
> depositions). In doing so, Frontier selectively produced time
> sheets showing some dates and times that some Claimants
> worked. You cannot hand-pick a selection of time sheet-

related documents that serve Frontier's interests, but refuse
to produce similar documents that have been requested by
the EEOC since 2019. Indeed, Frontier's ready production of
time sheets when it wished to undermines any claim that the
EEOC's straightforward request imposes a disproportional
burden.

Lastly, you are wrong to focus on Coastal formerly having
documents containing similar information. Frontier has an
independent obligation to produce responsive documents.

Dkt. #105-5.


By email dated February 14, 2023, defendant objected to the EEOC's

request for documents as untimely and disproportionate to the needs of the case. Dkt.

#105-6, p.6.


By email dated February 17, 2023, the EEOC reiterated that although it

had requested payroll records from 2011 through the present in its discovery demands

in 2019, defendant "has only selectively produced time sheets showing some dates and

times that some Claimants worked." Dkt. #105-6, p.5.


By email dated February 24, 2023, defendant represented that "all of

Frontier's documents as to the claimants named by the EEOC in this action have been

provided to the EEOC." Dkt. #105-6, p.3.


By email dated March 7, 2023, the EEOC requested clarification as to the

scope of its production, questioning whether defendant had "produced all payroll

records, including time sheets, for Claimants for some period of time . . ." Dkt. #105-6, p.2.

By affidavit dated April 28, 2023, defendant's Operations Manager, Jeffrey Pruet, states that he has "produced all payroll-type documents with respect to the Claimants that are relevant to the defense of Frontier and to the issues raised by the EEOC in this lawsuit." Dkt. #106-3, ¶ 2. More specifically, Mr. Pruet states that

> in 2011 and 2012 – after the claimants were identified by the EEOC and Frontier was provided with information on the alleged factual basis for the individual claims - I reviewed the daily time records and bills received from the staffing agencies for the claimants and identified and pulled those time sheets and bills that were relevant to Frontier's defenses and to the claims by the specific claimants. These documents were then used by Frontier[] for purposes of defense during the depositions of the specific claimants in those cases where these records were relevant to the defenses of the claims by the specific claimants.

Dkt. #106-3, ¶ 2. Attached to this affidavit is a Time Sheet for Coastal Staffing of NY, Inc., which identifies the number of hours 33 individuals worked each day for the for the week ending March 22, 2015, and is signed by Michael J. Oshirak as Supervisor. Dkt. #106-4.

The EEOC seeks to compel production of claimants' weekly time sheets. Dkt. #105, p.1. The EEOC argues that these records are encompassed in their discovery demand for personnel files and are relevant to establishing the dates and hours worked by claimants at defendant's business. Dkt. #105, p.2.

Defendant responds that the EEOC's document demand for personnel records does not encompass payroll records and notes that the EEOC did not seek to compel payroll records until depositions had been completed. Dkt. #106. Defendant argues that the EEOC was aware that Coastal Staffing maintained payroll records, but failed to inspect them before they were destroyed in a flood. Dkt. #106. Defendant argues that its use of specific time sheets at deposition does not warrant disclosure of additional time sheets, which defendant categorizes as irrelevant. Dkt. #106.

The EEOC replies that it only became aware of the existence of the time sheets when defendant used them at deposition and reiterates that such documents should have been disclosed in response to its discovery demands. Dkt. #107. The EEOC argues that it is immaterial that Coastal Staffing documents may have contained similar information; the documents requested by the EEOC are relevant to assessing, *inter alia*, when and how long claimants worked at defendant's facility and who supervised them. Dkt. #107.

The EEOC's First Request for Production of Documents defined personnel records to encompass the time sheets at issue. Even if it hadn't, it was appropriate for the EEOC to request defendant's time sheets upon becoming aware of such documentation during depositions. Defendant's use of such documents at deposition demonstrate their relevance and warrant disclosure of all such documentation in defendant's possession. Coastal Staffing's identification of records containing similar information does not impact defendant's obligation to produce

records in its possession or control. Given the lack of clarity as to the scope of production by defendant, the Court directs defendant to produce any time sheet from 2011 through the present that includes any claimant in this action that is in defendant's possession or control and/or to certify to the EEOC that all such documents have been produced.

**SO ORDERED.**

DATED:    Buffalo, New York
          August 4, 2023

                                        _s/ H. Kenneth Schroeder, Jr._
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**