**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,**

                              **Plaintiff,**

**v.**
                                                              **16-CV-00691-LJV-HKS**

**FRONTIER HOT-DIP GALVANIZING,**
**INC.,**

                              **Defendant.**
_____

## REPORT, RECOMMENDATION & ORDER

        This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #15.

        This is an employment discrimination action brought by the Equal Employment Opportunity Commission ("EEOC") alleging claims for racial and national origin discrimination, retaliation, and a hostile work environment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

        Currently before the Court are defendant's motion for partial summary judgment (Dkt. #98) and motion for sanctions (Dkt. #99).

**BACKGROUND**[1]

Defendant Frontier Hot-Dip Galvanizing, Inc. ("Frontier") is a family-owned metal coatings company in Buffalo, New York. Dkt. #1, ¶ 4; Dkt. #98-6, ¶ 2; Dkt. #113-7. Frontier has permanent employees and uses staffing agencies to provide temporary employees as needed. Dkt. #112-1, ¶ 10.

During the relevant period, Frontier used three temporary staffing agencies: (1) Coastal Staffing Services ("Coastal") from 2011 until May 2015[2]; (2) Express Employment Professional ("Express") from May 2015 to present; and (3) Affinity Personnel Solutions ("Affinity") from February 2018 to present. Dkt. #98-6, p. 24.

In 2014, the EEOC began an investigation into Frontier after two employees—Johnny Mitchell ("Mitchell") and Jean Basquin ("Basquin")—filed charges of discrimination against the company. Dkt. #1, ¶¶ 6, 15(a).

During its investigation, the EEOC visited Coastal's office and reviewed their files. (Kostelink Dep., Dkt. #98-3, p. 362). The EEOC also asked Coastal to submit reports regarding their workforce. (Kostelink Dep., Dkt. #98-3, p. 367).

---

[1] The record contains voluminous evidence that is material only to a narrow issue raised by these motions. The Court will not unnecessarily lengthen this Report and Recommendation by discussing all that evidence, most of which pertains to issues that the parties agree must be decided by a jury. Dkt. #98-4, p. 3. Nonetheless, as discussed below, the Court accepts as true the evidence produced by the EEOC of alleged widespread racist language and graffiti at Frontier.

[2] Although Frontier stated in discovery that it had used Coastal since 2009, Dkt. #98-6, p. 24, the Court defined the beginning of the discovery period as 2011. Dkt. #79, p. 7.

In response, Coastal provided two reports: (1) one listing the employees Coastal placed at Frontier from August 2, 2013 to May 22, 2015, as well as their hours worked ("the 2015 Employee Hours by Client Report"), Dkt. #98-3, pp. 330-348; and (2) one listing Coastal employees between August 2, 2013 and the date of the report, their race, and—if they were no longer employed—the reason for their termination ("the 2015 Frontier Employee Report"), Dkt. #98-3, pp. 322-329.

On October 22, 2015, the EEOC issued a determination finding probable cause to believe that Frontier had violated Title VII. Dkt. #1, ¶ 7.

The EEOC filed this case on August 25, 2016, on behalf of Mitchell, Basquin, and other "similarly aggrieved Black employees," referred to as "claimants." Dkt. #1, p. 1. As to Mitchell, the complaint asserts claims for race discrimination and retaliation in relation to his termination. Dkt. #1, ¶¶ 13, 15. As to Basquin, who was Haitian[3], the complaint asserts claims for national origin discrimination, harassment, and retaliation. ¶¶ 13, 15. The complaint further alleges that all claimants were subjected to a racially hostile working environment, including graphic racial slurs and graffiti. Dkt. #1, ¶¶ 12

---

[3] Basquin died on March 13, 2022, and his estate has been substituted in his place. Dkt. ## 113, ¶ 8; 113-1, p. 2.

On July 1, 2022, the EEOC identified twenty-six claimants, but it later withdrew seven. Dkt. ##113-1, 113, ¶ 7. Nineteen claimants, including Mitchell and Basquin, thus remain. Dkt. #112, p. 3 n.1.

Frontier now moves for summary judgment as to four of those claimants: David Wilson, Andre Osborn, Cameron Artis, and Charles Turner. Dkt. #98-4.[4]

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence

---

[4] Frontier acknowledges that triable issues of fact exist as to the claims of Mitchell, Basquin, and the other claimants. Dkt. #98-4, p. 3.

is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

### **Claimant David Wilson**

Frontier moves for summary judgment on the claims of David Wilson arguing that the undisputed facts show that he never worked at Frontier. Dkt. #98-4, p. 5. The Court disagrees and finds that there are genuine disputes of material fact as to whether, and when, Wilson worked at Frontier.

The 2015 Employee Hours by Client Report lists Wilson's employment at Frontier as "3/16/15" to "0/00/00." Dkt. #98-3, p. 348. Frontier contends that this means that "while Mr. Wilson was to begin work at Frontier on March 16, 2015, he worked no hours and received no pay." Dkt. #112-1, ¶20. The EEOC disputes this interpretation and argues that other records demonstrate that the "0/00/00" notation "was inaccurate or at a minimum did not mean that an individual did not work at Frontier during the period." Dkt. #112-1, ¶20.

Specifically, the EEOC notes that the report lists another employee, Timothy Robinson ("Robinson"), with employment dates of 2/25/15 to "0/00/00." Dkt. #98-3, p. 347. Yet records submitted by Frontier to Coastal show that Robinson worked at Frontier for at least two weeks after 2/25/15. Dkt. #98-3, pp. 336, 601, 603. The EEOC is thus correct that the "0/00/00" notation does not necessarily establish that the employee in question did not work at Frontier on or after that date.[5]

In fact, numerous employees on the 2015 Employee Hours by Client Report are shown with a "0/00/00" end date, yet the reasons for their terminations could reasonably be construed as inconsistent with the proposition that they never worked at Frontier: "attendance"; "abandoned job"; "currently working at HD"; "voluntary quit"; "hired perm"; and "layoff." Dkt. #98-3, pp. 341-348; Dkt. #98-3, pp.322-325.

---

[5] Frontier did not address the evidence regarding Robinson in its reply brief but instead stated that the "EEOC has failed to come forth with any evidence that Coastal's 2015 payroll records were inaccurate or unreliable." Dkt. #117, p. 3. As discussed herein, that statement is not correct.

Next, the 2015 Frontier Employee Report lists the reason for Wilson's termination as "NC/NS." Dkt. #98-3, p. 325. Frontier argues that, together, these reports thus prove that on March 16, 2015, Wilson "was a no call no show and never worked a single day at Frontier." Dkt. #98-4, p. 5. The EEOC disputes this assertion because, in part, where other employees were "no calls, no shows" on their first day, the reports specifically state as much. Dkt. #112-1, ¶ 23.

While the EEOC is correct that there are some notations to that effect— "called off first day," "never showed up 1st day," Dkt. #98-3, p. 323—the meaning of these notations is not as clear as either party claims.

For example, the 2015 Frontier Employee Report lists the reason for the termination of Bryant Rogers ("Rogers") as "NC/NS," Dkt. #98-3, p. 324, but the payroll records show that Rogers was employed from 3/16/15 to 3/17/15 and was paid for eight hours. Dkt. #98-3, pp. 336, 347. Clearly, the "NC/NS" notation does not mean that Rogers did not "work a single day" at Frontier.

Moreover, Coastal's records custodian, Rebecca Kostelink ("Kostelink"), testified in her deposition that a "no call, no show" notation could mean that the employee failed to report for work at any point during his employment. (Dkt. #98-3, p. 391). Kostelink further testified that she could not tell from the 2015 Frontier Employee Report whether Wilson worked at the company. (Dkt. #98-3, p. 395).

The waters are further muddied by Wilson's deposition testimony. First, it is not disputed that Wilson had suffered three strokes in the five years preceding his deposition. Dkt. #113-3, p. 1.

Second, Wilson testified that around 2012, he worked at General Mills through a staffing agency, other than Coastal, for about seventeen months. Dkt. #98-3, pp. 540-41. He also testified that he first went to Coastal in 2014 after a friend told him about it; that Coastal placed him at an electronics business where he worked for about three weeks; and that Coastal then placed him at a coffee factory where he worked for about nine months. Dkt. #98-3, pp. 541-46.

Wilson next testified that Coastal placed him at Frontier in March of 2015, and he worked there for fourteen days. Dkt. #98-3, pp. 547-49. He testified that his supervisor's name was Mike; he described the layout of the facility; and he testified that he was told to move heavy beams and clean certain areas. Dkt. #98-3, pp. 549-58. When shown the reports discussed above, Wilson repeated simply that he "was there" in March 2015. Dkt. #98-3, pp. 566, 568, 572.

By email on December 7, 2022, Frontier's counsel wrote the EEOC's counsel requesting that Frontier have until January 15, 2023 to serve errata sheets for its witnesses' deposition transcripts. The EEOC agreed on the condition that it would have sixty days to serve their witnesses' errata sheets. Dkt. #98-3, pp. 113-4, pp. 1-2.

On January 31, 2023, Wilson completed a sworn errata sheet stating that he had misunderstood Frontier's counsel's questions during his deposition regarding his employment at Frontier, and that he had also worked there "for approximately 14 days in either 2011 or 2012." Dkt. #98-3, pp. 608-09.

In March 2023, the EEOC produced an affidavit from Kostelink stating that from 2008 to 2013, Coastal used a professional employer organization called CAS Resources, Inc. ("CAS"), for employees placed at Coastal's clients, including Frontier. Dkt. #98-3, pp. 616-17. CAS was shown on those employees' W-2s as their employer. *Id.*

The EEOC also produced a 2012 W-2 for Wilson showing CAS as his employer, although it does not identify the staffing agency for whom CAS was working. Dkt. #98-3, p. 621.[6]

As should be evident from this discussion, the record is thus rife with genuine disputes of material fact regarding whether, and when, Wilson worked at Frontier.

Frontier's argument that the Court should not consider Wilson's errata sheet because it was untimely is without merit because, as noted, Frontier agreed to an extension of time for the EEOC to serve its errata sheets.

---

[6] Coastal's personnel files for employees it placed at Frontier in 2011 and 2012 were destroyed in a flood in their offices in 2022. Dkt. #98-3, pp. 401-03.

Second, Rule 30(e)(2) of the Federal Rules of Civil Procedure permits a deponent to make "changes in form or substance" after reviewing his deposition transcript, along with "the reasons for making them." This rule "does not permit the deponent to rewrite or alter his testimony or prevent an opposing party from using it later in the proceedings." *Express Freight Sys. v. YMB Enters. Inc.*, 20 CV 186 (ARR) (LB), 2022 WL 2467176, at *5 (E.D.N.Y. Mar. 29, 2022). Rather, "[w]hen an errata sheet is attached to a deposition, an opposing party nevertheless remain[s] able to utilize the original answer provided by [the deponent], and they will have the opportunity to impeach [the deponent] at trial with any inconsistencies." *Id.* (citations and internal quotation marks omitted).

While Frontier is correct that Wilson's errata sheet may create inconsistencies in his testimony, "[a]ny conflict between a deposition and later testimony goes to its weight, not its admissibility." *Id. See also Frank v. Costco Wholesale Corp.*, CV 18-4532 (DRH) (AKT), 2020 WL 7060142, at *1 (E.D.N.Y. Nov. 30, 2020) (noting that the Second Circuit "has allowed deponents to make any change, in form or substance, to their deposition transcript") (citations and internal quotation marks omitted).

Given that Wilson suffered several strokes prior to his deposition, and considering the totality of the evidence, the Court rejects Frontier's argument that Wilson's testimony is so incredible as to entitle Frontier to summary judgment on his claims. *See Bernardi v. N.Y. State Dep't of Corrs. and Cmty. Supervision*, 19 Civ. 11867 (PED), 2023 WL 3230558, at *4 (S.D.N.Y. May 3, 2023) (noting that "assessments of credibility and

choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment") (citation and internal quotation marks omitted).[7]

It will thus be recommended that Frontier's motion for summary judgment on Wilson's claims be denied.

## **Claimants Andre Osborne, Cameron Artis, and Charles Turner**

### *The Faragher/Ellerth Affirmative Defense*

An employer alleged to have created an unlawful hostile work environment may invoke the affirmative defense set forth by the United States Supreme Court in *Faragher v. Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998).

This defense consists of two elements: that (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Leopold v. Baccarat*, 239 F.3d 243, 245 (2d Cir. 2001) (citations and internal quotations omitted). The employer bears the burden of proving this defense. *Id.*

---

[7] Frontier's reliance on *Scott v. Harris*, 550 U.S. 372 (2007), Dkt. #117, pp. 3-5, is misplaced. There, the Supreme Court held that a plaintiff's version of contested events did not have to be credited on summary judgment because it was "blatantly contradicted" by a videotape. *Id.* at 379-81. The record here contains no such evidence.

The "existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense." *Id. See also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103-04 (2d Cir. 2010) (formal, written anti-harassment policy with complaint and investigation procedures, as well as no-retaliation protection, satisfied first prong of *Faragher/Ellerth* defense).

Under the second prong, the employer "bears the ultimate burden of persuasion to prove that [the plaintiff] acted unreasonably in failing to avail herself of the company's internal complaint procedures." *Leopold*, 239 F.3d at 246. "Once an employer has satisfied its initial burden of demonstrating that an employee has completely failed to avail herself of the complaint procedure, the burden of production shifts to the employee to come forward with one or more reasons why the employee did not make use of the procedures." *Id.*

An employee may show that his failure to make a complaint under an anti-harassment policy was reasonable based on a credible fear that it would not be taken seriously, as evidenced by the employer's ignoring or resisting similar complaints. *Id.* In considering the reasonableness of the employee's actions, "the facts and circumstances of each case must be examined to determine whether, by not pursuing  . . . avenues provided in the employer's [anti-]harassment policy, the plaintiff unreasonably failed to take advantage of the employer's preventative measures." *Gorzynski*, 596 F.3d at 105.

***Evidence Concerning Frontier's Policies and Claimants' Actions***

Frontier concedes that, prior to May 2015, it did not have a written anti-discrimination policy. Dkt. #98-4, p. 9; Dkt. #117, p. 6. Frontier argues, however, that claimants Andre Osborne ("Osborne"), Cameron Artis ("Artis"), and Charles Turner ("Turner")—who were all placed at Frontier by the staffing agency Affinity after May 2015—are barred from bringing claims for a hostile work environment because they were provided with written anti-discrimination policies and failed to make any complaint. *Id.*

The EEOC argues that summary judgment on this affirmative defense is improper because triable issues of fact exist under both of its prongs. Dkt. #112, pp. 21-27. The Court agrees.

The EEOC admits that these three claimants all completed applications with Affinity that contained the agency's anti-discrimination policy, and that they also were presented with Frontier's employee handbook, which included an anti-discrimination policy. Dkt. #112-1, ¶¶ 59-76. The EEOC further admits that these claimants never made complaints of discrimination to Affinity or Frontier. *Id.*

Nonetheless, the record contains evidence from which a reasonable jury could find that Frontier did not attempt to ensure the effectiveness of its anti-discrimination policy and that claimants were not unreasonable in failing to lodge complaints about the alleged racial harassment to which they were subjected.

Jeffrey Pruet, who is Frontier's Operations Manager—the company's third-highest ranking employee—is responsible for maintaining Frontier's employment policies. Dkt. #113-31, p. 6. He testified that temporary employees are presented with a binder with all Frontier's policies to review when they start, but they are not given copies of the policies. Dkt. #113-31, p. 20. Temporary employees are told to sign and return the acknowledgment forms. Dkt. #113031, p. 21. Pruet testified that if employees have complaints of discrimination, the policy "should be" to inform him or other management. Dkt. #113-31, p. 22.

Michael Oshirak ("Oshirak"), who is Frontier's plant Superintendent and direct supervisor of first-shift temporary employees, Dkt. #113-7; Dkt. #113-29, pp. 7-8, testified that he meets new temporary employees on the first shift and gives them the binder containing Frontier's policies. Dkt. #113-29, pp. 14-15. Oshirak testified that the binder contains policies concerning behavior, chemicals, and safety. *Id.* The behavior component prohibits drinking, drugs and fighting. *Id.* Oshirak testified that this was his practice of onboarding new temporary employees at the time of his deposition on September 23, 2022. *Id.* Pruet is not involved in the onboarding process. Dkt. #113-29, p. 15.

Oshirak testified that the binder also contains an anti-discrimination policy. Dkt. #113-29, pp. 15-16. However, he then testified he was "not really sure" if Frontier has a policy prohibiting discrimination in the workplace, and that he had not read the contents of the policy binder for about fifteen years. Dkt. #113-29, p. 22. Oshirak could not remember ever reading Frontier's anti-discrimination policy. *Id.* He further testified that

Frontier does not provide employees, including himself, with training about laws that prohibit discrimination. Dkt. #113-29, p. 22.[8]

Oshirak testified that if an employee came to him with a complaint of discrimination, he would try to find out what happened. Dkt. #113-29, p. 22-23. If he found out something had happened, he would report it to the front office; otherwise, he would just warn the employees. *Id.* This had been Oshirak's practice for the ten years preceding his deposition—*i.e.,* at least seven years after Frontier's promulgation of its anti-discrimination policy—although no one has ever told him that this is how he should respond to discrimination complaints. Dkt. #113-29, p. 23. He testified, "We just do it that way in the plant." *Id.* Oshirak testified that no one has ever reported discriminatory comments to him. *Id.*

Oshirak testified that use of the word "nigger" at Frontier used to be common, and that employees of color used it. Dkt. #113-29, pp. 39. Oshirak was given a written warning in 2015 after using the word to a black employee, Willis Plummer ("Plummer"), after Oshirak fired Mitchell—Plummer's brother-in-law—following a confrontation between Mitchell and Oshirak's grandson. *Id.* Specifically, Oshirak testified that he told Plummer "I already fired that nigger." Dkt. #113-29, p. 48. Plummer testified, however, that Oshirak said, "I'm going to fuck that nigger up." Dkt. #113-30, p. 33.

---

[8] Pruet testified that Frontier provides employees with training regarding sexual harassment mandated by the State of New York in 2020, but it does not cover racial harassment and is provided only to Frontier's permanent employees. Dkt. #113-31, pp. 21-22.

Although use of the term "nigger" is now prohibited at Frontier, Oshirak testified that if he used it currently, he would again receive a written warning Dkt. #113-29, pp. 39-40. However, he later testified, upon reviewing the warning that he received in 2015, that he would be fired if he used the word again. Dkt. #113-29, p. 49.

Further, the EEOC has produced testimony from claimants that there was widespread racially discriminatory graffiti and language at Frontier both before and after its adoption of an anti-discrimination policy in 2015, including after the filing of this lawsuit. Dkt. #112, pp.5-7, 11-12, 17, 23-24. The Court has reviewed this record evidence and concludes that it raises triable issues as to whether Frontier took reasonable care to prevent and correct promptly racially harassing behavior.

As noted above, reciting all this evidence would significantly lengthen this discussion, but suffice to say that the alleged language is racially offensive: "nigger"; "niggas must die"; "fuck them niggas"; "suck my dick, niggas"; "Go back to Africa niggas"; "coon"; "monkey"; and "Haitians is faggots." Dkt. #112, p. 5-6. Claimants also testified to seeing swastikas and Ku Klux Klan symbols. *Id.*

Further, there is testimony that Oshirak—who supervised the first-shift temporary employees—continued to use racially derogatory terms ("nigger" and "monkey") after his 2015 discipline for such conduct. (Hayes Dep., Dkt. #113-5, p. 74; Cooperwood Dep., Dkt. #113-13, pp. 87-88).

In its reply brief, Frontier dismisses claimants' testimony as "self-serving" and argues that it creates no triable issue because there is no evidence "that Frontier was ever on notice that this graffiti ever existed." Dkt. #117, p. 7 n.2. Frontier again misstates the record.

Several claimants testified that they complained to supervisors about the racist graffiti and that they were either told it would be taken care of, "don't worry about it," or that walls would be painted only to have new graffiti appear. Dkt. #112, pp. 6-7.

Indeed, the cited footnote in Frontier's reply demonstrates that triable issues exist. That is, while Frontier may believe that claimants have not testified truthfully, it concedes that it "disputes" their testimony. Dkt. #117, p. 7 n.2.

There is thus sufficient evidence to support a conclusion that, while Frontier had an anti-discrimination policy on its books, the company did not take reasonable steps to see that it was made known to employees and enforced. *See Spriggs v. Diamond Auto Glass*, 242 F. 3d 179, 187 (4th Cir. 2001) ("[T]he mere promulgation of an anti-harassment policy, no matter how well-conceived, will not suffice to show the requisite level of care where the employer has administered the policy in bad faith or has rendered it ineffectual by acting unreasonably.").

For similar reasons, triable issues exist as the second prong of the *Faragher/Ellerth* defense. Osborne, Artis, and Turner each testified that the racially derogatory graffiti was so pervasive at Frontier that they believed management must have

been aware of it and chose to take no action. Artis Dep., Dkt. #113-9, pp. 100-101; Osborne Dep., Dkt. #113-23, pp. 70-71; Turner Dep., Dkt. #113-24, pp. 52-53, 55.[9] Whether this was a reasonable inference for these employees to draw is a question for a jury. *Gorzynski*, 596 F.3d at 105 (whether it was reasonable for plaintiff to believe that it would be futile to complain about sexual harassment through various channels raised an issue of fact for a jury). *See also Bakhit v. Safety Marking, Inc.*, Civil Action No. 3:13-CV-1049 (JCH), 2015 WL 4001924, at *3 (D. Conn. July 1, 2015) (reasonableness of employees' belief that complaining about discrimination would be futile presented question for a jury).[10]

It will thus be recommended that Frontier's motion for summary judgment as to the *Faragher/Ellerth* defense be denied.

## **Motion for Sanctions**

Frontier has also filed a motion for sanctions asking the Court to impose sanctions on the EEOC pursuant to 28 U.S.C. § 1927 for vexatiously multiplying these proceedings. (Dkt. #99).

---

[9] Turner testified that, after seeing "fuck all niggers" on a stall in the restroom on his first day at Frontier, he left within an hour, telling Frontier that he was leaving because he was allergic to zinc. Turner Dep. Dkt. #113-24, pp. 64-65.

[10] In addition, Affinity's harassment policy directed employees to report any harassment to Affinity, not to the company where they were placed. Dkt. #98-3, p. 741.

However, this motion is based on the same arguments contained in Frontier's motion for partial summary judgment, and it presumes the merits of those arguments. Frontier also repeats its belief that some of the claimants' testimony is either false or mistaken and that their claims are "totally incredible." Dkt. #99-1, pp. 2, 7.

Because the Court has concluded that there are numerous genuine disputes of material fact, Frontier's motion for sanctions is not well taken. *See Sapia v. Home Box Office*, 18 civ 1317(CM), 2022 WL 76798, at *11 (S.D.N.Y. Mar. 14, 2022) (sanctions under 28 U.S.C. § 1927 not warranted where defendant failed to show that plaintiffs' claims were "entirely without color" and "brought in bad faith") (citation omitted).

It will thus be recommended that Frontier's motion for sanctions be denied.

## **CONCLUSION**

For the foregoing reasons, it is recommended that Frontier's motion for partial summary judgment (Dkt. #98) and motion for sanctions (Dkt. #99) be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed .R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:       Buffalo, New York

             April 11th, 2024

                                              s/ H. Kenneth Schroeder, Jr.
                                              **H. KENNETH SCHROEDER, JR.**
                                              **United States Magistrate Judge**