IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| FRONTIER HOT-DIP GALVANIZING, INC., | ) ) ) ) |
| Defendant. | ) ) |

CIVIL ACTION NO.
1:16-cv-00691-LJV-HKS

**THE EEOC'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT FRONTIER HOT-DIP GALVANIZING, INC.'S
OBJECTIONS TO THE APRIL 11, 2024 REPORT AND RECOMMENDATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ………………………………………………………1

1.      STANDARD OF REVIEW……………………………………………………..1

II.     THE R&R CORRECTLY DETERMINED THAT THERE ARE GENUINE DISPUTES OF MATERIAL FACT ABOUT DAVID WILSON'S EMPLOYMENT AT FRONTIER …………………………………………………..3

III.    THE R&R CORRECTLY FOUND THAT FRONTIER FAILED TO ESTABLISH A FARAGHER-ELLERTH AFFIRMATIVE DEFENSE AS TO CLAIMANTS OSBORNE, ARTIS, AND TURNER ……………………………………………….5

CONCLUSION…………………………………………………………………………9

**PRELIMINARY STATEMENT**

The EEOC submits this memorandum of law in opposition to the objections of Defendant Frontier Hot-Dip Galvanizing, Inc. ("Frontier") to the Magistrate Judge's April 11, 2024 Report, Recommendation and Order ("R&R") recommending denial of Frontier's motions for partial summary judgment and for sanctions. *See* R&R at 19; ECF No. 119 ("Def. Obj."). Despite the detailed analysis of the facts and arguments set forth in the R&R, Frontier contends that the Magistrate Judge "ignored" record evidence in denying the partial summary judgment motion and, in essence, erred in *not agreeing* with Frontier's conclusions about the facts. But the R&R includes a thorough review of the evidence offered by both parties, and rightly concludes that a genuine dispute of material fact exists as to the EEOC's claims concerning Claimants David Wilson, Andre Osborne, Cameron Artis[1], and Charles Turner. More specifically, the EEOC provided significant documentary evidence and testimony supporting that (1) Wilson worked at Frontier, and (2) while Frontier had an anti-discrimination policy on paper, it did not take reasonable steps to enforce it – or even to make it known to employees. And the R&R correctly determined that the issue of whether it was reasonable for Osborne, Artis, and Turner to believe their complaints to Frontier would be futile is an issue of fact for the jury. Frontier's Objections largely rehash the same facts and arguments the Magistrate Judge fully considered and rejected. The EEOC therefore respectfully requests that Frontier's Objections be overruled and this Court adopt the Magistrate Judge's recommendation that Frontier's motions be denied.

**I.    STANDARD OF REVIEW**

In reviewing a Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C.

---

[1] There are two Claimants in the EEOC's lawsuit with the surname Artis. Frontier's motion did not address DeMario Artis, thus all references here are to Cameron Artis.

§ 636(b)(1). Timely objected-to portions of a magistrate judge's report and recommendation are reviewed *de novo*. *See id*. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Maki v. New York*, 597 Fed. App'x 36, 37 (2d Cir. 2015); *Kandey Co. v. Barbera*, 2013 WL 358386, at *1 (W.D.N.Y. Jan. 29, 2013).[2] *But* "when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a clear error review." *Walker v. Bellnier*, No. 9:17-CV-1008(GTS)(CFH), 2019 WL 1305825, at *2 (N.D.N.Y. Mar. 22, 2019) (emphasis in original); *see Purisima v. Tiffany Ent.*, No. 09-CV-3502 (NGG) (LB), 2014 WL 3828376, at *2 (E.D.N.Y. Aug. 4, 2014) (where an objecting party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (citing *Pall Corp. v. Entegris, Inc.,* 249 F.R.D. 48, 51 (E.D.N.Y. 2008)); *Singh v. New York State Dep't of Taxation and Finance*, 865 F. Supp. 2d 344, 348 (W.D.N.Y. 2011) (where party makes rehashed objections, report reviewed for "clear error or manifest injustice").

"When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Spencer*

---

[2] Frontier did not object to the portion of the R&R denying its motion for sanctions. R&R at 18-19. Where there are no objections to portions of the R&R, those portions are reviewed for clear error. *See Acquisto v. Manitowoc FSG Operations*, No. 11-cv-803-A, 2012 WL 4721761, at *1 (W.D.N.Y. Oct. 3, 2012) ("The Court reviews unobjected-to findings for clear error"). More importantly, "failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object." *See United States v. Berry*, 2017 WL 5624242 at *2 (W.D.N.Y. Nov. 22, 2017), quoting *U.S. v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Here, the R&R explicitly stated (in underlined text) that "[f]ailure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order." *See* R&R at 20. Thus, Frontier has waived any objections to the recommendation to deny its motion for sanctions.

*v. Schenectady Police Dep't*, No. 6:20-CV-1316(GTS)(TWD), 2021 WL 855862, at *2 (N.D.N.Y. Mar. 8, 2021) (quoting Fed. R. Civ. P. 72(b), 1983 Addition to Advisory Committee Notes).

II.  **THE R&R CORRECTLY DETERMINED THAT THERE ARE GENUINE DISPUTES OF MATERIAL FACT ABOUT DAVID WILSON'S EMPLOYMENT AT FRONTIER.**

As a preliminary matter, Frontier's objection to the R&R's recommendation to deny summary judgment as to Wilson is merely a rehashing of the facts and arguments it made in its moving and reply papers. In some instances, the objection appears to be an almost word-for-word copy-and-paste of its reply brief, with a few references to the Magistrate Judge or the R&R thrown in. *Compare* Def. Obj. at 4-8 *with* ECF No. 117 ("Def. Reply Br.") at 2-5.  Accordingly, Frontier's objection as to Wilson should be reviewed for clear error. *See Walker*, 2019 WL 1305825, at *2; *Johnson v. Brown*, No. 9:20-CV-00622(LEK)(ATB), 2022 WL 4395995, at *4 (N.D.N.Y. Sept. 23, 2022) (finding no clear error or manifest injustice where "most of [] objection was copied verbatim from Defendants' Motion for Summary Judgment").

In its Objections, Frontier claims that the EEOC merely offered a speculative and conclusory story about facts Frontier presented.  *See, e.g.,* Def. Obj. at 5.  The R&R considered but did not credit this theory.[3]  Instead, the R&R correctly determined that the facts presented by the EEOC created a factual dispute that must be left for the jury.

---

[3] In support of its Objections, Frontier again relies heavily on *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See* Def. Obj. at 5, 7, 8. But the Magistrate Judge considered and explicitly rejected Frontier's reliance on *Scott* because "[t]here, the Supreme Court held that a plaintiff's version of contested events did not have to be credited on summary judgment because it was *'blatantly contradicted'* by a videotape." R&R at 11 n.7 (quoting *Scott*, 550 U.S. at 379-81 (emphasis added)). The R&R correctly found that "no such evidence" exists here. *Id.*

3

As discussed in the EEOC's opposition papers[4] ("EEOC SJ Opp.") at 10-11, 16-19), Wilson testified and clarified in the errata sheet that he worked at Frontier in 2011 or 2012, and again in 2015.  *See* ECF No. 113-25 (Wilson Dep.) at 39; ECF No. 98-3 at 608.  He recalled the layout of Frontier's building and operations, his work assignment, and who his boss was.  *See* ECF No. 113-25 at 41-48.  Acknowledging that Wilson had three strokes before testifying, the EEOC also provided documentary evidence to support Wilson's testimony.  The R&R analyzed this evidence in detail and rejected Frontier's conclusions.

As discussed in the R&R at 7, the staffing agency that placed temporary employees like Wilson at Frontier provided a report that identified when in 2015 each employee was placed at Frontier (the staffing agency's records for 2011 and 2012 were destroyed in a 2022 flood).  *See* ECF No. 98-3 at 401-02, 415.  The records that still exist are somewhat ambiguous.  For example, a 2015 report shows that Wilson worked at Frontier on 3/16/15 to "0/0/00."  *See* ECF No. 98-3 at 348.  It also lists the reason for Wilson's termination as "nc/ns," which purportedly indicates he was a "no call/no show."  While Frontier again asserts that the only meaning of these entries could be that Wilson never showed up to Frontier and was never paid, the R&R properly notes that the 2015 report itself undermines that assertion.  Multiple employees with the "0/00/00" notation worked at Frontier.  *See* R&R at 6 (explaining that Claimant Timothy Robinson worked for at least two weeks with the end employment date of "0/00/00," and that reasons for termination associated with the "0/00/00" entry, like "voluntary quit" and "hired perm" suggest that the employees worked at Frontier).  In addition, the "nc/ns" notation cannot have the meaning Frontier ascribes.  The staffing agency records custodian testified that the

---

[4] *See* EEOC's Memorandum of Law in Opposition to Frontier's Motion for Partial Summary Judgment, ECF No. 112.

notation could reflect a failure to report to work at any point during employment. *See* ECF No. 98-3 at 391. And indeed, the 2015 report contains an "nc/ns" notation for at least one worker who worked at Frontier and was paid for that work. *See* R&R at 7, citing ECF No. 98-3 at 336, 347. Other workers who failed to report to work on the first day of their employment were specifically noted as "called off first day," or "never showed up 1st day." *See* R&R at 7, citing ECF No. 98-3 at 323. The records custodian testified that she *could not tell* from the records whether Wilson worked at Frontier. *See* R&R at 7.

But this is not the end of the disputes of fact. Wilson's W-2 for 2012 shows that he was paid by CAS Resources, Inc., an organization that the staffing agency used to pay workers placed at Frontier. *See* ECF No. 98-3 at 616-17, 621. A staffing agency witness swore in an affidavit that CAS Resources, Inc., was, indeed, the organization the staffing agency used in 2008 to 2013 to pay workers placed at Frontier. *See* ECF No. 98-3 at 616-17. Whether reviewing for clear error or *de novo*, the Court should find the R&R properly concluded that "the record is thus rife with genuine disputes of material fact regarding whether, and when, Wilson worked at Frontier." *See* R&R at 9. This is a matter for the jury. *See* R&R at 10-11 (citing *Bernardi v. New York State Dep't of Corr. & Cmty. Supervision*, No. 19 Civ. 11867 (PED), 2023 WL 3230558, at *4 (S.D.N.Y. May 3, 2023) ("assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment")).

### III. THE R&R CORRECTLY FOUND THAT FRONTIER FAILED TO ESTABLISH A FARAGHER-ELLERTH AFFIRMATIVE DEFENSE AS TO CLAIMANTS OSBORNE, ARTIS, AND TURNER.

The Court should overrule Frontier's objection and adopt the R&R's recommendation to deny summary judgment as to Claimants Osborne, Artis, and Turner. While not as blatantly verbatim as Frontier's objection to the R&R about Wilson, Frontier's objection concerning

5

Osborne, Artis and Turner suffers from a similar deficiency, merely regurgitating the same arguments it made before the Magistrate Judge. *Compare* Def. Obj. at 9-12 *with* Def. Reply Br. at 6-9. As such, this section should also be reviewed for clear error. *See Walker*, 2019 WL 1305825, at *2.

The R&R properly assessed the *Faragher-Ellerth* affirmative defense, which requires a showing "that (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise[,]" R&R at 11 (citing *Leopold v. Baccarat*, 239 F.3d 243, 245 (2d Cir. 2001)), and found there is evidence from which a jury could find Frontier failed on both prongs. R&R at 13.[5]

On the first prong, the R&R found sufficient evidence that Frontier did not take reasonable care to prevent or promptly correct the racially offensive behavior. R&R at 17. For example, although, as of 2015, Frontier had an anti-discrimination policy, as the R&R notes, the managers who were primarily responsible for enforcing the policy (Pruet and Oshirak[6]) were not familiar with the policy or its provisions. R&R at 13-14. In fact, Oshirak was "not really sure if Frontier has a policy prohibiting discrimination in the workplace"— "Oshirak could not remember ever reading Frontier's anti-discrimination policy." R&R at 14.[7] And as the R&R

---

[5] In its Objections, Frontier misstates the second prong. Def. Obj. at 9. To succeed on its motion, it is not merely enough for Frontier to show that the three Claimants were on notice of Frontier's procedures and failed to utilize them. *Id.* Rather, any failure must be *unreasonable*. R&R at 11.
[6] Incredibly, Frontier now seeks to minimize Oshirak's importance by calling him a mere shift supervisor. Def. Obj. 9 n.1. While Oshirak did indeed supervise the first shift during the relevant period, he was the Plant Superintendent. *See* ECF No. 113-29 at 22. Thus, all other shift supervisors (and their subordinates) reported up to him. *See id.* at 24-29.
[7] If Frontier's own *managers*—the third and fourth highest employees in the company—did not know about or understand its anti-discrimination policy, Frontier cannot seriously contend the policy was an effective mechanism that should shield it from liability. *See* R&R 17 (finding sufficient evidence to support conclusion that Frontier "did not take reasonable steps to see that

6

describes, the EEOC set forth significant evidence of widespread racially discriminatory graffiti and language "both *before and after*" the 2015 adoption of Frontier's policy, including after the filing of this lawsuit. R&R at 16-17 (emphasis added).[8]

Additionally, there is evidence that new offensive graffiti continued to appear after Claimants complained to supervisors. R&R at 17. This too creates a question of fact whether Frontier exercised reasonable care. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000) ("[I]f harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate."). While Frontier disputes the existence of graffiti after 2015 and that it received complaints (Def. Obj. at 11-12 (referring to Claimant testimony as "self-serving")), as the R&R correctly notes, that very dispute "demonstrates that triable issues exist." R&R at 17; *see Saborit v. Harlem Hosp. Ctr. Auxiliary, Inc.*, No. 19-CV-4686 (LJL), 2021 WL 1063241, at *3 (S.D.N.Y. Mar. 19, 2021) (Hotly disputed testimony "does not eliminate the need for a trial; it creates the need for a trial.").

And although Frontier claims that it took corrective measure by painting certain walls, there is evidence that racially discriminatory graffiti appeared throughout the plant, including after Frontier claims to have painted.[9] R&R at 17. "Under those circumstances, a jury is in the best position to decide whether there was a "practical [ ] possibility of preventing any workplace

---

[its] policy was made known to employees and enforced." (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 187 (4th Cir. 2001))). That the anti-discrimination policy was buried in a binder with other policies concerning behavior, safety and chemicals (without copies or training provided to employees) underscores that conclusion. *See* R&R at 14, 15.

[8] *See also* R&R at 16 (citing deposition testimony that Oshirak continued to use terms such as "nigger" and "monkey" after Frontier disciplined him for such conduct and instituted its policy).

[9] With respect to Frontier's repeated claim that the EEOC should have inspected Frontier's premises, the EEOC again notes that it *has* attempted to visit Frontier—a request that was denied immediately. *See* ECF No. 114 at p. 8 n.9. Given Frontier's change of heart, the EEOC will renew its request and schedule time to visit the plant.

7

graffiti." *Kasperek v. New York State, Dep't of Corr. & Cmty. Supervision*, No. 16-CV-671-LJV-MWP, 2022 WL 682633, at *7 (W.D.N.Y. Mar. 8, 2022) (alteration in original); *Ringel v. New York City Dep't of Educ.*, 616 F. Supp. 3d 205, 231-32 (E.D.N.Y. 2022) ("the question of whether [defendant] took appropriate remedial action is a question of fact, not law." (citation and alterations omitted)). Given the ineffectual policy and Frontier's repeated failure to stop the harassment that was known to management, the R&R correctly concluded there are triable issues on the first prong of the Faragher-Ellerth affirmative defense. R&R at 17.

The R&R also correctly determined Frontier did not establish there were no factual disputes as to the second prong, that the claimants "unreasonably" failed to take advantage of the employer's corrective mechanisms. R&R at 17-18. The three Claimants each testified that the racially derogatory graffiti was so pervasive that they believed management was already on notice and did nothing about it, making complaints pointless. *Id.*[10]

Frontier claims that the Magistrate Judge erred by not considering that Affinity, the staffing agency through which Osborne, Artis, and Turner were placed, had its own anti-discrimination policy. Def. Obj. 9-10. Frontier is wrong. The R&R did consider the existence of Affinity's policy and found that it did not mandate summary judgment. *See* R&R at 18 n.10. Even more importantly, Frontier has provided no authority whatsoever stating that an employer can absolve *itself* of liability (or support this affirmative defense) by merely pointing to the anti-

---

[10] The R&R also noted an employee may show his failure to complain was reasonable based on a credible fear it would not be taken seriously because the employer ignored or resisted similar complaints, citing *Leopold*, at 246. R&R at 12. The EEOC's opposition papers provide evidence and argument that Frontier routinely failed to address complaints such that an employee could believe complaining would be futile. EEOC SJ Opp. at 4-5, 24-25. On this record, Frontier cannot meet its burden "to prove that [the three Claimants] acted unreasonably in failing to avail [themselves] of the complaint's internal complaint procedures" and policies. *Leopold*, 239 F.3d at 246 (employer has "the ultimate burden of persuasion").

discrimination policy of another entity. *See Artis v. Lyon Shipyard, Inc.*, No. 2:17-CV-595, 2019 WL 13295542, at *8 n.6 (E.D. Va. Sept. 30, 2019) (declining to assess employer's *Faragher-Ellerth* affirmative defense on the basis of the staffing agency's policy.). Thus, the R&R properly determined Frontier cannot, as a matter of law, demonstrate these Claimants unreasonably failed to take advantage of any preventative or corrective opportunities. *See* R&R at 18 (reasonableness of Claimants' belief that complaining would be futile is a question for the jury (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010); *Bakhit v. Safety Marking, Inc.*, No. 3:13-cv-1049 (JCH), 2015 WL 4001924, at *3 (D. Conn. July 1, 2015))).

As triable issues of fact abound with respect to *both* prongs, the R&R correctly found that Frontier did not meet its burden in proving its *Faragher-Ellerth* affirmative defense. *See* R&R at 17, 18. As such, and reviewing for clear error, this Court should adopt the R&R's finding denying Frontier's motion for partial summary judgment as to Claimants Osborne, Artis, and Turner. R&R at 18.

## **CONCLUSION**

Frontier's Objections merely restate the same faulty conclusions that supported its motion for partial summary judgment.  When all ambiguities are resolved in favor of the EEOC as the non-moving party and all factual inferences are properly credited to the EEOC, *see Gorzynski*, 596 F.3d at 101; *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004), the testimony and record evidence establish genuine disputes of material fact that require overruling Frontier's objections to the R&R and adopting the April 11, 2024 Report and Recommendation in its entirely.

Dated: May 14, 2024
      New York, New York

                                  EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

                                  */s/ Renay M. Oliver*
Renay M. Oliver
Trial Attorney
33 Whitehall Street, Floor 5
New York, NY 10004
(929) 506-5289
renay.oliver@eeoc.gov

Caitlin E. O'Neil
Trial Attorney
Buffalo Local Office
300 Pearl Street, Suite 450
Buffalo, NY 14202
(716) 551-5923
caitlin.oneil@eeoc.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2024, Plaintiff, the EEOC, served its Memorandum of Law in Opposition to Defendant's Objections to the April 11, 2024 Report and Recommendation via ECF on Defendant's Counsel of Record: Linda H. Joseph, Esq. and Alicia C. Rood, Esq., Schröder, Joseph & Associates, LLP, 394 Franklin Street, Buffalo, NY 14202.

Dated: May 14, 2024
       Buffalo, New York

                                      */s/ Caitlin E. O'Neil*
                                      Caitlin E. O'Neil
                                      Trial Attorney
                                      EQUAL EMPLOYMENT
                                      OPPORTUNITY COMMISSION
                                      Buffalo Local Office
                                      300 Pearl Street, Suite 450
                                      Buffalo, NY 14202
                                      (716) 551-5923
                                      caitlin.oneil@eeoc.gov